Allen, J.
 

 During the course of this opinion the plaintiff in error will be referred to as the Board of Education, and the defendant in error as the Cemetery Corporation.
 

 It was in the year 1880 that the Cemetery Corporation acquired land in excess of 50 acres. At that time the general law permitted cemetery corporations to hold land not in excess of 100 acres. R. S., 'Section 3571; G. 0., Section 10093. The section has since been amended to permit cemetery corporations to hold land not in excess of 640 acres. 109 Ohio Laws, p. 172. The legal question involved in this case is the same under the statute
 
 *436
 
 with, the 100-acre limitation or as amended, and is as follows:
 

 Does a cemetery corporation incorporated in the year 1839, under a special act, which provided that the corporation should have the power “to purchase and hold land not exceeding fifty acres” for cemetery purposes, but which gave no power of appropriation to the said corporation, by appropriating land subject itself to the general law and thereby secure the right to avail itself of the provisions of Section 10093, General Code, which extends the limitation upon the amount of land which may be held for cemetery purposes by a cemetery corporation, and hence become enabled to secure an injunction to prevent a board of education from appropriating part of the land which it holds for cemetery purposes in excess of 50 acres, but not in excess of the statutory limitation?
 

 The Board of Education does not contend that the use of property for cemetery purposes is not a publio use, and, in fact, many authorities are to be found decisive of that particular point.
 
 Evergreen Cemetery Ass’n.
 
 v.
 
 City of New Haven,
 
 43 Conn., 234, 21 Am. Rep., 643; 1 Lewis on Eminent Domain (3d Ed.), Section 273.
 

 “A cemetery is as public a place as a courthouse, or a market.” Brewer, J., in
 
 Cemetery Association
 
 v.
 
 Meninger,
 
 14 Kan., 312.
 

 The public character of this particular cemetery iq emphasized by provisions in Section 12 and Section 13 of its charter, which read, respectively:
 

 “Nothing in this act shall be so construed as to prevent the right of poor persons who are unable to pay from being interred in said cemetery.
 

 
 *437
 
 “This act shall be deemed and considered a public act and shall be construed benignly in favor of said corporation.”
 

 The act further provided that the corporation should have the power to purchase and hold land for cemetery purposes not exceeding 50 acres.
 

 At the time the appropriation proceeding enjoined by the present action was instituted, the Cemetery Corporation owned 57.25 acres. The 50-acre limitation was exceeded by the corporation in the year 1880. The 1.94 acres sought to be appropriated are a part of the three tracts of land last acquired, and were acquired after the maximum acreage specified in the special act of incorporation, to wit, 50 acres, had been reached. This land had not been laid out nor platted as lots, or prepared for burial or cemetery purposes, and in fact had been leased to the Board of Education as a playground for several years prior to the commencement of the appropriation case.
 

 Injunction will lie, however, in a proper case to prevent appropriation of grounds held, used, or occupied as a cemetery whether the specific land has been used for burial or not.
 
 McCann
 
 v.
 
 Trustees of Mt. Gilead Cemetery,
 
 166 Ind., 573, 77 N. E., 1090. In this case a railroad company was about to construct a railroad over the east part of a cemetery, but not on nor over the part whereon the graves were located. The statute provided that no person or corporation should locate or construct a railroad on any real estate held, used or occupied as a cemetery, and the court says at page 575 (77 N. E., 1091):
 

 
 *438
 
 “This protects not only that part of the cemetery where there are graves bnt the part intended for burials in the future, and includes all reasonable additions to an existing cemetery, even though a part thereof is not occupied by graves, but is held for cemetery purposes.”
 

 The Court of Appeals found that the land involved herein was held for cemetery purposes, and hence the fact that the land had not yet been prepared for burial purposes is immaterial.
 

 Price
 
 v.
 
 Methodist Episcopal
 
 Church, 4 Ohio, 515, is not in point upon this question, for in that case the land was purchased, not for a burying ground, but for a church.
 

 The Code sections which particularly apply to this case are as follows:
 

 Section 7624,. General Code: “When it is necessary to procure or enlarge a school site, or to purchase real estate to be used for agricultural purposes, athletic field or playground for children, or for the purpose of erecting and maintaining buildings to be used as homes or houses for public school teachers, when the cost of such erection has been contributed by private donations or for the purpose of providing an outlet to dispose of sewage from a school building or grounds, and the board of education and the.owner of the property needed for such purposes, are unable to agree upon the sale and purchase thereof, the board shall make an accurate plat and description of the parcel of land which it desires for such purposes, and file them with the probate judge, or court of insolvency of the proper county. Thereupon the same proceedings of appropriations shall
 
 *439
 
 be had which axe provided for the appropriation of private property by municipal corporations.”
 

 Section 10093, General Code: “A company or association incorporated for cemetery purposes may appropriate or otherwise acquire and may hold, not exceeding six hundred and forty acres of land; also, take any gift or devise in trust for cemetery purposes, or the income from such gift or devise according to the provisions of such gift or devise, in trust, all of which shall be exempt from execution and from being appropriated for any other public purpose, and shall be exempt from taxation, if held exclusively for burial purposes, and in no wise with a view to profit.”
 

 The Board of. Education claims that under the special act of March 1, 1839, the directors of the Cemetery Corporation have exceeded their powers, and that the corporation has no right to hold land for cemetery purposes in excess of 50 acres, and hence has no right to enjoin the appropriation of the land sought for a playground.
 

 The Cemetery Corporation urges that by its appropriation of real estate in 1880 it has subjected itself to the general law, and hence can avail itself of the provisions of Section 10093, above quoted, which extend the acreage limitation.
 

 It is conceded that the present holding, while it exceeds the acreage limitation of the special charter, does not exceed the limitation of either the original general statute or its present amended form.
 

 The contentions above stated are grounded upon the following sections of the general law:
 

 Section 8731: “Corporations created before the
 
 *440
 
 adoption of the present Constitution, which have not, by election or some other act, come to be governed by laws since passed, shall be governed and controlled by the laws then in force, and the valid modifications thereof since or herein enacted. Other corporations now existing or hereafter created shall be governed and controlled by the provisions of this title. (R. S., Section 3232.)”
 

 Section 8732: “A corporation created before the adoption of the present Constitution, and now actually doing business, may accept any of the provisions of this title. When a certified copy of such acceptance is filed with the secretary of state, so much of its charter as is inconsistent with the provisions of this title is hereby repealed. (R. S., Section 3233.)”
 

 Section 8736: “Corporations created before the adoption of the present Constitution, which take any action under or in pursuance of this title, shall thereby and thereafter be deemed to have consented, and be held to be a corporation, and to have and exercise all its franchises under the present Constitution and the laws passed in pursuance thereof, and not otherwise.”
 

 The title referred to is title 9, of part 2, General Code, which deals with the subject of private corporations and includes Sections 8623 to 10212, General Code.
 

 Under the above sections, corporations incorporated under special act prior to the adoption of the Constitution of 1851 become subject to general laws since enacted in one of three ways:
 

 (1) By filing a certificate of acceptance with the secretary of state.
 

 
 *441
 
 (2) By election or some other act.
 

 (3) By taking’ “any action under or in pursuance of this title.”
 

 It is conceded that the Cemetery Corporation has not filed the certificate of acceptance with the secretary of state; hut has it made an election or performed, in the words of the statute, “some other act” by which “it has come to be governed by laws since passed?” This phrase is very broad and may perhaps indicate that any positive action taken by the corporation which shows an intent on the part of the corporation to operate under the general statutes would constitute at least a quasi election and bring the corporation under the general law. However, it is not necessary to decide whether this somewhat indefinite phrase was complied with, for the question is concluded by considering the third method by which a! corporation ma;? become subject to the general laws, which is by taking “any action under or in pursuance of this title.”
 

 Has the corporation taken any such action?
 

 In the year 1880, as shown by the record, the corporation appropriated land under Section 10093, which is included in the title specified. The special charter gave the corporation no such power. Certainly by exercising this power with which cemetery corporations were invested by the general law, and with which this particular corporation was not invested under its charter, the corporation “took action” under part 2, title 9. It also thereby elected to be governed by the general corporation law, and is hence entitled to avail itself of the exemption in Section 10093, General Code, which,
 
 *442
 
 under the recent amendment, extends to 640 acres. Authority in favor of this contention is to be found in the case of
 
 C. H. & D. Rd. Co.
 
 v.
 
 Cole,
 
 29 Ohio St., 126, 23 Am. Rep., 729, in which the court held that “Railroad companies incorporated prior to the adoption of the constitution of 1851, and which avail themselves of' the
 
 twenty-fourth
 
 section of the general corporation act of 1852 (S. & C. Stat. 281), either by taking leases of the roads of other companies,, or by leasing their own roads to other companies, are to be regarded as thereby accepting a ‘provision’ of said act, within the meaning of its
 
 sevemiy-first
 
 section, and relinquishing all rights under their charters inconsistent with the provisions of said act.”
 

 The Dartmouth College Case
 
 (Dartmouth College
 
 v.
 
 Woodward,
 
 4 Wheat., 518) is quoted by the Board of Education in this connection, but it does not apply. There is no attempt here upon the part of the Legislature to, change the charter of the Cemetery Corporation. This is a case in which the corporation changes its own charter by its own act under the specific provisions of the statutes thereto applying. In compliance with the privilege offered it by the law, the corporation acts under part 2,. title 9, of the General Law, and thus becomes subject thereto.
 

 Moreover, we have here an instance in which the Board of Education seeks to appropriate property already devoted to a public use. Because of this public use the property under the law is “exempt from execution, from taxation, and from being appropriated to any other public purpose.” Section 10093, General Code.
 

 
 *443
 
 Before property appropriated to a public use can be appropriated to another public use, which will later materially interfere with the original use, or be partly destructive thereof, it should be made to appear clearly that the same is necessary and not destructive of the public use to which the land is already devoted.
 
 C., S. & C. Rd. Co.
 
 v
 
 Village of Belle Centre,
 
 48 Ohio St., 273, 27 N. E., 464;
 
 City of Cincinnati
 
 v.
 
 L. & N. Rd. Co.,
 
 88 Ohio St., 283, at page 293, 102 N. E., 951. The record does not establish clearly that this appropriation is necessary. The finding of facts of the Court of Appeals states that the appropriation will be destructive of the public use to which the land is devoted.
 

 Power to make this second appropriation of property already devoted to a public use is granted to the Board of Education, if granted at all, only as a general power under Section 7624, General Code. Express power to take this land, which by statute is exempt from appropriation, is not granted. But land exempt from appropriation cannot be taken under a mere general power of appropriation. Upon this one ground, if no other ground existed, the contention of the Board of Education must be overruled.
 
 State ex rel. Atty. Gen.
 
 v.
 
 Cincinnati Cent. Ry. Co.,
 
 37 Ohio St., 157, at page 176.
 

 Judgment of the Court of Appeals affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias and Day, JJ.. concur.
 

 Wanamaker, J., not participating.