MARKS ET AL., APPELLEES, *v.* WAGNER, APPELLANT.

(No. 13-76-14—Decided March 30, 1977.)

*Mr. Michael J. Malone* and *Mr. Garver Oxley,* for appellant.

*Mr. Carl A. Williams* and *Mr. Michael Lang,* for appellees.

GUERNSEY, J. On July 20, 1974, a car driven by defendant, Ronald E. Wagner, collided with a bicycle on

which Arnold C. Marks, Jr., then age 10, hereinafter referred to as the boy, was riding. The actual nature and extent of his injuries does not appear in the record although there is evidence from which it could be inferred that he was bleeding, in pain and suffering. According to the testimony of Arnold C. Marks, Sr., the plaintiff father, the collision took place within approximately two hundred feet from the front porch of the family home and when a companion ran to the house and advised the father that the boy had been hit, the father, thinking the boy was dying, ran from the house, jumped from the porch over the steps onto the ground fracturing his leg. The father and mother joined as plaintiffs in an action against the defendant filed in the Court of Common Pleas of Seneca County, the father claiming damages for his injuries in the amount of $175,000 and the mother claiming damages for the loss of the father's services and consortium in the amount of $35,000, alleging the negligence of the defendant in driving his motor vehicle against their son.

The defendant generally denied the claims of the plaintiffs and alleged contributory negligence and assumption of the risk of the plaintiff (*sic*). The cause was tried to a jury and a verdict rendered, upon which a judgment was rendered for the father against the defendant in the amount of $25,000, and for the defendant and against the mother. It is from this judgment that the defendant appeals assigning the following as errors of the trial court:

1. " * * * [I]n instructing the jury as to the 'rescue doctrine,' and in overruling the motion of defendant for a directed verdict as to the 'rescue doctrine' ";

2. " * * * in not sustaining defendant's motion for a directed verdict";

3. " * * * in admitting into evidence for the jury's consideration plaintiff's exhibit 1 and 2 which were not identified";

4. "* * * in failing to properly instruct the jury during the course of the trial and in its charge to disregard evidence correctly held by the court to be inadmissible."

The first assignment of error is not based on the

contention that the court's instruction to the jury on "rescue doctrine" was incorrect, but is based instead on a claim that on the record reasonable minds can come to only one conclusion on the determinative issue of whether defendant's responsibility for his allegedly negligent action should be extended to the plaintiff father, and that conclusion is adverse to the plaintiff thus taking the issue from the jury.

Defendant's stated rationale for this contention is that the evidence shows (1) "the plaintiffs herein did not view the collision," (2) the plaintiff father "was not at the scene of the accident at the date and time in question," (3) the location of the plaintiff father's "injury was some two hundred (200) feet away from the location of the collision," (4) that "the time period elapsing between the collision * * * and plaintiff's accident, was ten minutes," and (5) "no evidence was presented that would indicate that Arnold Marks, Jr. was in peril at the time of the fall of plaintiff, Arnold Marks, Sr." The first three of these items are undisputed. As to the fourth the same *defense* witness who testified on direct examination as to the ten minute period of time also testified on the same page of the record on cross-examination that from the time she heard the boy scream till she reached the scene of the accident was "about two minutes" and that "about that time" she saw "Mr. Marks jump off the porch." As to the fifth item, she also testified that it came to her attention that the child had been struck because he was screaming. She testified that when she went out of her house to the scene:

"[He was] laying on the ground, couldn't move or nothing. Every time they'd move, he'd cry." She said that the thing she remembers about the whole thing is "[s]eeing the boy laying there and suffering like that."

There are two principle cases in Ohio—namely, *Pennsylvania Co.* v. *Langendorf* (1891), 48 Ohio St. 316, and *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Lynch* (1903) 69 Ohio St. 123—that establish the rescue doctrine as part of the common law of Ohio. The parties also cite *Woodward* v. *Gray* (1933), 46 Ohio App. 177, and *Doran* v. *Hempey* (1928), 6 Ohio Law Abs. 622, in this

respect, but since each of these two cases were decided by the appellate court in favor of the defendant on the two-issue rule, anything said therein about the rescue doctrine is wholly *obiter dictum*.

In the *Langendorf* case, the Supreme Court held, among other things:

"While one who rashly and unnecessarily exposes himself to danger cannot recover damages for injuries thus brought on himself, yet, where another is in great and imminent danger, one who attempts a rescue may be warranted by surrounding circumstances in exposing his limbs or life to a very high degree of danger. And in such cases he should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment." (Paragraph two of the syllabus.)

In the *Lynch* case, the Supreme Court held:

"In an action to recover on account of injuries sustained in an effort to save human life the conditions upon which there may be recovery are: That the person whose rescue is attempted must be in a position of peril from the negligence of the defendant, and the rescue must not be attempted under such circumstances, or in such a manner, as to constitute recklessness. Those conditions appearing, a recovery will not be prevented by the fact that negligence of the person whose rescue is attempted contributed to his peril, nor by the fact that the plaintiff is an employee of the defendant." (Syllabus.)

Technically, the rescue doctrine is limited solely to the issue of the existence of contributory negligence on behalf of the rescuer, including the lack of imputation to the rescuer of the negligence of the person whose rescue is involved, and, in appropriate cases, that recovery is not precluded by the fact that the rescuer is an employee of the defendant. The existence of actionable negligence on the part of the defendant is still determined by common law principles relating to the scope of the defendant's duty, including the element of foreseeability of injury, the violation of that duty and proximate cause. See 65 Corpus Juris Secundum 929, Negligence, Section 63(143) and 65A,

Corpus Juris Secundum 83, Negligence, Section 124. However, commonly in cases where a duty exists not to injure the public, and a person is injured due to the negligence of the defendant, if the circumstances are such, notwithstanding that the defendant may not have actually foreseen an attempt to rescue, that such attempt is normal and within the range of the natural and probable, the defendant is held accountable to the rescuer as if he had foreseen the rescue attempt. 57 American Jurisprudence 2d 607, Negligence, Section 227, and *Wagner* v. *International Ry. Co.* (1921), 232 N. Y. 176. Moreover, the violation of the duty of the defendant to the rescuer occurs at the moment when the duty to the person to be rescued is breached setting in motion the forces triggering the rescue attempt; *i. e.*, the defendant's actionable negligence occurs at that time. Though we know of no other Ohio cases which have previously treated the question, the issue of whether the proposed rescuer is thereafter contributorily negligent in attempting a rescue is determined, not by a consideration of the circumstance of the actual peril at that time of the person to be rescued, but by a consideration of the mental state of the rescuer, as to what he reasonably believed from the facts known to him the peril of the person to be rescued to be at that time. More simply stated, the circumstance to be considered is not the fact of peril but the reasonable belief of continued peril. *Wagner* v. *International Ry. Co.*, *supra*, and *Ellmaker* v. *Goodyear Tire & Rubber Co.* (Mo. App. 1963), 372 S. W. 2d 650.

In our opinion a reasonable belief of continued peril could not exist in a case where the negligent act causing the victim's injuries had run its course and the victim's life was no longer in peril, unless the knowledge of the rescuer gave him reason to believe that the peril to the victim's life was continuing. Thus, there could be no reasonable belief of continued peril if the rescuer had knowledge that the victim's condition was stable requiring only medical attention; but there would be in the same circumstances if the rescuer had knowledge that the vic-

tim was lying in close proximity to a hot wire which continued to imperil his life or lying in the middle of a highway exposed to further injury from the traffic thereon.

There was evidence here from which the jury could determine that the father had a reasonable belief that his son was in continued peril. He testified as to being informed that his son was in an accident, that "he was bleeding real bad," and that he thought his son was dying.

Although in these circumstances the evidence would permit the jury to determine it foreseeable, if not foreseen, that with this belief the plaintiff father would run to the aid of the son and thus expose himself to injury in a possible variety of other ways, actionable negligence could only exist if the evidence would also support a determination that it was foreseeable that in going to his son's aid the plaintiff father might injure himself by jumping from his front porch. Such action by the father also relates, of course, to contributory negligence but, in the scheme of things, first relates to the issue of defendant's actionable negligence. In any event, in the circumstances here, these were all jury questions which the trial court and this court are not permitted to decide as a matter of law.

Even assuming the existence of the five states of facts set out by the defendant as a basis for this assignment of error (which in two cases we have shown to be disputed) none of such facts preclude the issues relating to the "rescue doctrine" from going to the jury and we find the first assignment of error without merit.

The second assignment of error relies strongly on *Palsgraf* v. *Long Island R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99, and *Self* v. *American Legion* (1972), 29 Ohio App. 2d 189, it deals with the foreseeability issue which we have already discussed under the first assignment, and claims that Arnold Marks, Sr. "is not a 'foreseeable plaintiff'" within the rules set forth in those cases. The *American Legion* case does not necessarily rest on foreseeability and the *Palsgraf* case finds, in effect, that the foreseeability there involved was, as a matter of law, too remote. We find nothing in the circumstances of the instant case

requiring such a conclusion or altering our conclusion that the issue of foreseeability in this case was an issue for the jury.

The third assignment of error deals with the admissibility of plaintiff's Exhibit 1, a radiologist's bill for "balance due" on "radiology fee at Tiffin Mercy" in the amount of $10.80, and Exhibit 2, a hospital bill showing a "charge amount" of $669.80, an "insurance amount" of $548.90 and "patient amount" of $120.90, which were offered into evidence without identification on the defense stipulation that "they were reasonable and necessary" but over the defense objection that they had not been identified.

The only purpose of submitting the statements into evidence was to prove the services rendered and the amount charged therefor. The defendant's stipulation in connection with the statements that "they were reasonable and necessary," in ordinary meaning, can mean only that the services listed thereon were necessary and the charges listed thereon for such services were reasonable. The stipulation tended to admit the very things for which the statements were being offered into evidence. The scope of the authentication and resultant admission of documentary evidence is within the sound discretion of the trial court. In these circumstances, we do not find that the discretion was abused.

The fourth assignment of error rests on a claim by the defendant that throughout the trial upon the court's sustaining objections to evidence and motions to strike evidence the court failed to properly and sufficiently admonish the jury as to what it should disregard. In some of the instances cited in defendant's brief the objection was to the question and there was no answer thereto. In those instances there was no testimony for the jury to disregard. In other instances though an objection to an answer was sustained and the jury directed to disregard without elucidation as to what should be disregarded the defendant made no request to the court for further admonishment. In other instances though an objection to an answer was sustained the defendant did not follow with

either a motion to strike the answer or a motion for instructions to the jury to disregard the answer. At no place in the record does there appear a motion for mistrial by reason of the alleged failure to properly admonish the jury.

Thus, although we do not approve the cursory rulings of the court, it is not apparent in the record that the defendant was prejudiced thereby, that the defendant took sufficient action to invoke corrective action by the court, or sufficient action to protect the record for review in this respect.

Finding no error in any of the particulars assigned and argued the judgment of the trial court must be affirmed.

*Judgment affirmed.*

MILLER, P. J., and COLE, J., concur.